IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| AMANDA SPILLERS, | : |
| Plaintiff, | : |
| v. | : Civil Action No.<br>: 5:08-CV-218 (HL) |
| HARTFORD LIFE INSURANCE<br>COMPANY and MIDSOUTH<br>FEDERAL CREDIT UNION, | : |
| Defendants. | : |

## ORDER

Before the Court is Defendant Hartford Life Insurance Company's Motion to Dismiss Defendant MidSouth Federal Credit Union (Doc. 3), pursuant to Rule 21 of the Federal Rules of Civil Procedure.[1]

**I.  BACKGROUND**

Plaintiff Amanda Spillers ("Plaintiff"), a citizen of Georgia, brought this action in the Superior Court of Bibb County, Georgia against Hartford Life Insurance Company ("Hartford"), a citizen of Connecticut, and MidSouth Federal

---

[1] Rule 21 of the Federal Rules of Civil Procedure states:
Misjoinder of parties is not a ground for dismissing an action.  On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party.

1

Credit Union ("MidSouth"), a citizen of Georgia.[2]  The dispute concerns the recovery of accidental death insurance benefits to Embry Bledsoe, who died on July 16, 2007 from cardiogenic shock following surgery.  Plaintiff is the only child and sole surviving heir of decedent.

Effective December 1, 1995, AMEX Life Assurance Company ("AMEX") issued to Bibb Teachers Federal Credit Union, the predecessor of MidSouth, the AMEX group accidental death insurance policy.   As a member of the credit union, Plaintiff's father, Mr. Bledsoe, was issued a certificate, which stated, among other things, the scope of coverage under the AMEX policy.[3]  The certificate was mailed to Mr Bledsoe by Affinion Benefits Group, L.L.C. ("Affinion"), a third-party administrator to MidSouth.

On December 1, 2001, the AMEX policy terminated.  Effective the same day, Hartford issued to MidSouth the Hartford group accidental death insurance policy.  MidSouth members who had been insured under the AMEX policy

---

[2] MidSouth is a federal chartered credit union, and thus, is not incorporated in Georgia, or indeed, in any state.  However, because its business activities are "localized" in Georgia, it is a Georgia citizen for diversity purposes.  See Loyola Fed. Savings Bank v. Fickling, 58 F.3d 603, 606 (11th Cir. 1995).

[3] In pertinent part, the AMEX policy defined "injury" as:
Bodily injury of an insured which: 1) Is caused by an accident that occurs while the policy is in force as to the insured person; 2) Results directly in loss insured by the policy; 3) Creates a loss due, directly and independently of all other causes, to such accidental injury; and 4) Occurs in the manner and under the circumstances described in the description of hazards which apply.  (Def.'s Mot. to Dismiss, Ex. 1 at 21.)

became insured in the same amounts under the Hartford policy without having to complete new enrollment forms.  Mr. Bledsoe was mailed a new certificate by Affinion, which stated the scope of coverage under the Hartford policy.[4]

Following Mr. Bledsoe's death, Hartford refused to pay any insurance benefits under the Hartford policy claiming the cause of death was not within the policy's scope of coverage.  Plaintiff then filed a complaint in state court, setting forth two counts: In Count I, Plaintiff alleged breach of contract, whereby Defendant Hartford is alleged to owe $75,000 in total accidently death benefits and Defendant MidSouth is alleged to owe $1,000 in total accidental death benefits.[5]  In Count II, which is against MidSouth solely, Plaintiff alleged that MidSouth breached a duty to inform the insured that the provisions of the group policy issued by Hartford differed from the provisions of the prior group policy issued by AMEX.

Defendant Hartford subsequently filed a notice of removal.  In the notice of

---

[4] In pertinent part, the Hartford policy defined "injury" as:
Bodily injury resulting directly from accident and independently of all other causes which occurs while the Covered Person is covered under this policy.  Loss resulting from: a) Sickness or disease, except a puss-forming infection which occurs through an accidental wound; or b) Medical or surgical treatment of a sickness or disease; is not considered as resulting from injury. (Def.'s Mot. to Dismiss, Ex. 1 at 29.)

[5] In Count I, Plaintiff also alleges that Defendants' refusal to pay the loss was made in bad faith, and thus, Defendants are liable for penalties and attorney's fees pursuant to O.C.G.A. § 33-4-6.

removal, Hartford contends that MidSouth is a sham defendant, named only to defeat diversity jurisdiction, and therefore removal to federal court. In regards to Count I, Hartford argues that under the policy, if accidental death benefits were recoverable, the entire $76,000 would be paid by Hartford. In regards to Count II, Hartford argues that MidSouth neither owed a duty, nor breach any duty, to inform Mr. Bledsoe of differences in language between the scope of coverage between the AMEX and Hartford policies.

## II. ANALYSIS

### A.   Fraudulent Joinder

An action in state court may be removed to federal court when the federal courts have diversity or federal question jurisdiction. 28 U.S.C. § 1441(a). Under diversity jurisdiction, federal courts have jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332. As a corollary to the well-known complete diversity requirement, Strawbridge v. Curtiss, 3 Cranch 267, 2 L. Ed. 435 (1806), "a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed." Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006) (citing Lincoln Prop. Co. v. Roche, 546 U.S. 81, 126 S. Ct. 606, 613, 163 L. Ed.2d 415 (2005)).

Here, the named Plaintiff, Spillers, is a citizen of Georgia. Defendant Hartford is a citizen of Connecticut. Defendant MidSouth is a citizen of Georgia.

Accordingly, on the face of the pleadings, there is a lack of complete diversity, which would preclude removal of the action to federal court and therefore require remanding the action to state court.

If the naming of a defendant were fraudulent, however, such that the non-diverse defendant were frivolously or otherwise illegitimately named, solely to defeat diversity jurisdiction, the court may jettison the fraudulently joined defendant and retain jurisdiction over the remaining parties. Id. The Eleventh Circuit has promulgated a three-fold test for determining whether a defendant has been fraudulently joined: the removing party must show, by clear and convincing evidence, either (1) that there is no possibility that the plaintiff would be able to establish a cause of action against the resident defendant in state court, (2) that the plaintiff fraudulently pleaded jurisdictional facts, or (3) where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. Triggs v. John Crump Toyota, 154 F.3d 1284, 1287 (11th Cir. 1998).

The removing party bears the burden of proving that joinder of a resident defendant was fraudulent. Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by* Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). The court must look to the plaintiff's pleadings at the time of removal, Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir.

5

1983) (quoting Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S. Ct. 347, 349, 83 L. Ed. 334 (1939)), supplemented by any affidavits and deposition transcripts submitted by the parties. Legg v. Wyeth, 428 F.3d 1317, 1322 (11th Cir. 2005) (quoting Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998)).

The proceeding used for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Rule 56(b) of the Federal Rules of Civil Procedure: all questions of fact must be resolved in favor of plaintiff. Id. at 1322-23. However, "there must be some question of fact before the [court] can resolve that fact in plaintiff's favor." Id. Explaining the remand procedure within the context of alleged fraudulent joinder, the Eleventh Circuit has stated:

> While such a procedure requires that all disputed questions of fact be resolved in favor of the nonremoving party, as with a summary judgment motion, in determining diversity the mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts. So also as with a summary judgment motion: [W]e resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove

the necessary facts.

Id. (internal citations and quotations omitted) (emphasis in original).

### B.    Count I

In Count I, Plaintiff alleges breach of contract, seeking $76,000 in total benefit payments provided for under the Hartford policy, and claiming Hartford and MidSouth owe $75,000 and $1,000, respectively.  In its motion to drop MidSouth as a defendant, Hartford argues, and this Court agrees, that under the plain language of the policy, if accidental death benefits were recoverable, the entire $76,000 would be paid by Hartford.[6]  In Plaintiff's response opposing Hartford's motion, Plaintiff states: "There is no doubt . . . that such an action exists under Count II.  Therefore, we will not argue whether or not Defendant MidSouth could be liable under Count I."  Accordingly, Plaintiff's allegations that MidSouth is responsible for paying $1,000 under the policy is deemed abandoned.

### C.    Count II.

In Count II, which is against Defendant MidSouth solely, Plaintiff alleges that at the time of the change of insurers and policies from AMEX to Hartford, Defendant MidSouth, as the group policyholder, was under a duty to inform the

---

[6] The group policy states, in pertinent part: "If an Insured Person's Injury results in any of the following losses within 365 days after the date of accident, we [Hartford] will pay the sum shown opposite the loss." (Def.'s Mot. to Dismiss, Ex. 1 at 29.)

Plaintiff's decedent of any differences between the old and new policies–specifically, the differences of scope of coverage–and that Defendant MidSouth breached that duty by failing to inform Plaintiff's decedent of the changes. Hartford contends that there is no possibility that the plaintiff would be able to establish a cause of action against MidSouth in state court under Count II because MidSouth neither owed a duty, nor breach any duty, to inform Plaintiff's decedent of differences in language between the scope of coverage between the AMEX and Hartford policies.

Under Georgia Law, it is clearly established that an employer has a fiduciary duty to notify its employees of all modifications in the scope of coverage between their former coverage and their coverage under a new policy.[7] Dawes Mining Co. v. Callahan, 246 Ga. 531, 536, 272 S.E.2d 267, 270 (1980); accord City of Brunswick v. Carney, 187 Ga.App. 634, 635, 371 S.E.2d 201, 202 (1988). In Dawes, the Georgia Supreme Court was confronted with an issue involving a group health insurance program wherein the employer changed coverage from the existing policy to another insurance company and incorrectly advised an employee that the coverage under the new policy was the same as under the former policy. 246 Ga. at 531-32. In fact, the new insurance master policy had a pre-existing condition exclusion requiring no treatment of such a condition for 90

---

[7] The court must follow state law in ruling on state-law claims. Erie R.R. v. Tomkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188 (1938).

days before coverage would begin under the new policy.  Id.  Within that period, the employee's wife become ill from a pre-existing condition and eventually died. Id.  After the insurance company refused coverage, the employee brought suit against the employer.  Id.

In upholding the jury verdict in favor of the employee, the Georgia Supreme Court set forth a pre-contract/post-contract "dividing line": Prior to procuring a group policy the employer acts as an agent of the employees.  Conversely, after procuring a group policy, whereby a contract is then in force, the employer acts as an agent of the insurer "for every purpose necessary to make effective the group policy."  Id. at 533-34.  Moreover, when the employer acts as an agent for the employee there exists a concomitant "duty to notify the employee[] of differences between the old and new policies and of any rights the employee[] may have to continue the old insurance on an individual basis," and "where this duty is breached, an employee can recover such damages as result from the difference in coverage."  Id. at 536.

Hartford argues that Dawes, and subsequent cases relying on Dawes, recognize only a fiduciary relationship between employers and their employees; whereas the present case involves an association, MidSouth, and one of its members, Plaintiff's decedent, no similar fiduciary relationship exists.  However, obviating an analysis into the applicability of Dawes to the context of an association and its members, this Court finds Plaintiff failed to either present or

9

refute evidence that MidSouth did not breach any duties. Therefore, even assuming a fiduciary relationship existed between MidSouth and Plaintiff's decedent, Plaintiff failed to demonstrate MidSouth breached a fiduciary duty.

In showing that there is no possibility that Plaintiff can succeed on a breach of fiduciary duty claim against MidSouth, Hartford provides an affidavit from the Director of Client Services at Affinion, stating that Affinion mailed Plaintiff's decedent an individual certificate of insurance. (Def.'s Mot. to Dismiss, Ex. 1 at 12.) Plaintiff does not dispute the receipt of the individual certificate of insurance. It is further undisputed that the individual certificate of insurance contained the terms of the new insurance policy, including scope of coverage.

Upon review, this Court finds authoritative case law that could be unfavorable to finding MidSouth did not breach any fiduciary duties–but only if the Plaintiff had actually stated *how* MidSouth breached its alleged duties. Compare, e.g., Brandon v. Mayfield, 215 Ga.App. 735, 452 S.E.2d 181 (1994) (finding factual dispute as to breach of fiduciary duty where employee submitted affidavit stating she was never notified of the differences in coverage between the former and new insurer and where employer itself was under false impression the new insurer covered pre-existing conditions); Dawes, 246 Ga. 531, 272 S.E.2d 267 (affirming jury verdict in favor of employee where employer misrepresented to employee that there was no differences in coverage between existing and new insurer, mailed an insurance card to employee that did not contain the relevant

coverage provisions, and employee could not read regardless); Calhoun v. Kut-Kwick Corp., 172 Ga.App. 511, 323 S.E.2d 699 (1984) (finding factual dispute as to breach of fiduciary duty where employee submitted affidavit stating he could not read and where employer misrepresented to employee that he was covered so long as he maintained his job).  In the above cited cases, the common denominator was a factual dispute as to whether the employee was provided reasonable notice.

    Here, Plaintiff has utterly failed to come forward with any affidavits or depositions creating an issue of fact as to reasonable notice, which is required when opposing a claim of fraudulent joiner.  Legg, 428 F.3d at 1322-23 (reversing district court, and finding fraudulent joiner, where only plaintiff's pleadings were considered, stating "[w]hen the defendant's affidavits are undisputed by the plaintiffs, the court cannot then resolve the facts in the plaintiffs' based solely on the unsupported allegations in the plaintiffs' complaint.").  Plaintiff has done nothing more than rely upon the complaint, which under Count II conclusively asserts: "At the time of the change of insurers and policies, Defendant MidSouth was under a duty to inform the Plaintiff's decedent of any differences between the old and new policies.  Defendant MidSouth breached that duty by failing to inform Plaintiff's decedent of the changes." (Compl. ¶ 14.)  Contrary to cases where there is a factual dispute as to reasonable notice, Plaintiff failed to submit any evidence that MidSouth did not notify the Plaintiff's decedent of changes in the

scope of coverage, that MidSouth misrepresented the scope of coverage to Plaintiff, that Plaintiff was unable to read the individual certificates of insurance, or that any other circumstance would suggest a lack of notice.[8]  Stated simply, Plaintiff can not create an issue of fact by stating none; the court cannot rest on a metaphysical doubt as to material facts, and in the absence of any proof, the court does not assume that the Plaintiff could or would prove the necessary facts.

### III.    CONCLUSION

Finding that Defendant MidSouth was fraudulently joined, subject matter jurisdiction exists in this case.  Accordingly, Defendant Hartford's Motion to Dismiss Defendant MidSouth (Doc. 3), is GRANTED.


**SO ORDERED**, this the 2nd day of March, 2009.


                              *s/   Hugh Lawson*
                              **HUGH LAWSON, Judge**

wjc

---

[8] To the contrary, in Plaintiff's response opposing Hartford's motion, Plaintiff admits: "In our case, [Mr. Bledsoe], was not summoned to the office, no insurance representative-or other person-stated the coverage was the same, and [Mr. Bledsoe] could read." (Pl.'s Br. 4.)  The court recognizes Plaintiff's evidentiary dilemma: certain facts, which may or may not be beneficial to Plaintiff in Count II, may have only been known by Plaintiff's decedent.  This problem, however, only underscores why there is no possibility the plaintiff would be able to establish a cause of action against MidSouth; without the means to bring forth evidence supporting the pleadings there can be question of fact to resolve in Plaintiff's favor.